UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
JENI WALLACE,

                         Plaintiff,

-*against*-

ANR PRACTICE MANAGEMENT, LLC, ANDRE WAISMANN, *In His Individual and Official Capacity,* MURRAY FRIEDMAN, *In His Individual and Official Capacity,* and NEAL FRIEDMAN, *In His Individual and Official Capacity,*

                         Defendants.
------------------------------------------------------------------X

Docket No.

**COMPLAINT**

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Plaintiff, JENI WALLACE, (hereinafter "Plaintiff"), by her attorneys, PHILLIPS & ASSOCIATES, Attorneys at Law, PLLC, hereby complains of the Defendants, upon information and belief, as follows:

### NATURE OF THE CASE

1. Plaintiff complains pursuant to **Title VII of the Civil Rights Act of 1964**, as amended, 42 U.S.C. § 2000e *et. seq.* ("Title VII"), and the **New York State Human Rights Law**, (NYS Executive Law § 296, *et seq.*) ("NYSHRL") and seeks damages to redress the injuries Plaintiff has suffered as a result of being **discriminated against and sexually harassed** on the basis of her sex/gender and then she was **terminated by her employer in retaliation** for complaining of sexual harassment in the workplace.

### JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 42 U.S.C. § 2000(e), *et seq.*

3. The Court has supplemental jurisdiction over all state law claims pursuant to 28 U.S.C. §1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the actions or omissions giving rise to the claims for relief occurred within this judicial district.

## PROCEDURAL PREREQUISITES

5. Plaintiff filed a charge of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC") on June 22, 2019.

6. Plaintiff received a Notice of Right to Sue from the EEOC, dated 9/25/2019, with respect to the instant charges of discrimination. A copy of the Notice is annexed to this Complaint.

7. This action is being commenced within 90 days of receipt of the Notice of Right to Sue.

## PARTIES

8. At all relevant times herein, Plaintiff was and is a resident of the State of New York and was and is a "person" and an "employee" entitled to protection as defined by Title VII and the NYSHRL.

9. At all relevant times herein, Defendant ANR Practice Management, LLC **(hereinafter "ANR")**, is a foreign limited liability company that operates a medical clinic in Nassau county located at 961 Broadway, Woodmere, New York 11598.

10. At all relevant times herein, Defendant **ANR** is incorporated in the state of Delaware and **ANR**'s registered agent in Delaware is National Registered Agents, Inc., with a physical address listed at 160 Greentree Dr. Ste 101, Dover, Delaware 19904.

11. At all relevant times herein, Defendant **ANR** is incorporated in the state of Florida and ANR's registered agent in Florida is Nrai Services, Inc., with a physical address listed at 1200 South Pine Island Road, Plantation, Florida 33324.

12. At all relevant times, Defendant **ANR** operates three other entities located in Naples, Florida, Thun, Switzerland and Israel. All four entities represent a single, integrated

2

enterprise where there is evidence of interrelation of operations, centralized control of labor relations, common management, and common ownership or financial control. Therefore, collectively Defendant **ANR** meets the 15-employee minimum standard.

13. Defendant Andre Waismann, **(hereinafter "Waismann")** is the founder of Defendant ANR and also serves as their Chief Technology Officer. Defendant Waismann is being sued herein in his official and individual capacities. Defendant Andre Waismann was Plaintiff's supervisor and had the ability to make decisions regarding the terms and conditions of Plaintiff's employment.

14. Defendant Murray Friedman, **(hereinafter "Murray Friedman")** is the founder of Defendant ANR and also serves as their Chief Executive Officer. Defendant Murray Friedman was Plaintiff's supervisor and had the ability to make decisions regarding the terms and conditions of Plaintiff's employment. Defendant Murray Friedman is being sued herein in his official and individual capacities.

15. Defendant Neal Friedman, **(hereinafter "Neal Friedman")** is the Chief Operating Officer of Defendant ANR. Defendant Neal Friedman was Plaintiff's supervisor and had the ability to make decisions regarding the terms and conditions of Plaintiff's employment. Defendant Neal Friedman is being sued herein in his official and individual capacities.

16. Defendant ANR, Andre Waismann, Murray Friedman and Neal Friedman are collectively referred to as "Defendants."

17. At all times, Defendant Murray Friedman and Defendant Neal Friedman had the ability to hire, fire and affect the terms and conditions of Plaintiff's employment. Defendant Murray Friedman did, in fact, terminate Plaintiff's employment.

## **FACTUAL ALLEGATIONS**

18. On November 7, 2018, Defendants employed Plaintiff as a full-time Director of Operations making approximately $80,000 salary.

19. On April 6, 2019, Plaintiff received a raised making approximately $120,000 salary.

20. At all times, Plaintiff was an above satisfactory employee that performed her duties without any major performance issues. Plaintiff was well qualified for her position/title.

21. Upon information and belief, Plaintiff was never written up or disciplined for any work-related issues other than the allegations in this Complaint.

22. On or about the evening of November 29, 2018, Plaintiff was sexually harassed by Defendant Waismann.

23. Defendant Waismann took Plaintiff by her shoulders and leaned over while Plaintiff was sitting at her desk with full intentions to kiss Plaintiff.

24. In shock, Plaintiff moved her face in time for Defendant Waismann to miss her lips and instead his kiss landed right underneath her eye. (hereinafter "sexual harassment incident").

25. One of the partners of Defendant ANR, Mr. Ralph Rose, witnessed the sexual harassment incident between Plaintiff and Defendant and sternly said something in Hebrew to Defendant Waismann.

26. Plaintiff immediately stood up visibly upset and stated out loud that it was time for her to go home.

27. Defendant Waismann left the area right after the sexual harassment incident.

28. Afterwards, Mr. Rose apologized to Plaintiff and told Plaintiff Defendant Waismann would be dealt with the following morning.

29. During the same evening, as Plaintiff was exiting the office building, Defendant Waismann approached Plaintiff abruptly and made another attempt to kiss Plaintiff by grabbing her shoulders and leaning over.

30. Plaintiff averted Defendant Waismann's sexual advances and his kiss landed on the bridge of her nose. (hereinafter "second sexual harassment incident"). This was a clear objection to Defendant Waissman's unwanted sexual advances.

31. Plaintiff quickly left in distress.

32. Plaintiff made a complaint that same evening to Mr. Ralph Rose.

33. The next day, Plaintiff arrived to work and immediately started experiencing retaliation and hostility in and around her work environment.

34. Plaintiff was told "anyone who did not share in Dr. Waismann's vision would be fired!!"

35. **Plaintiff took this statement as a threat in retaliation for making a complaint about the sexual harassment she endured the day before by Defendant Waismann.**

36. Plaintiff complained to Defendant Murray Friedman that she is experiencing retaliatory actions against her and questioned whether she was still employed with Defendants.

37. Defendant Murray Friedman stated he was not sure what her employment status is at the moment and sent Plaintiff home early for the day. Plaintiff understood this be an adverse employment action in retaliation for her complaint of sexual harassment.

38. Plaintiff was told she would get a response over the weekend as to whether she will continue to be employed with Defendants.

39. During this time, Plaintiff received a text message from Defendant Waismann's Assistant, Mali Saat, and she attempted to explain and justify Defendant's Waismann sexually misconduct. She described his "aggression" as an expression of affection.

5

40. On December 3, 2018, Plaintiff returned to work over the weekend after no one contacted her.

41. Defendants and staff members were surprised to see Plaintiff returned to work.

42. On December 4, 2018, Plaintiff sent an email to Defendant Neal Friedman to further report the sexual harassment incident.

43. Defendant Neal Friedman told Plaintiff he would address her complaint that afternoon. However, he never did.

44. On December 10, 2018, Defendant Neal Friedman held a meeting with Plaintiff to address the sexual harassment incident and stated it was a misunderstanding on Plaintiff's part and justified Defendant Waismann's misconduct as a "cultural etiquette".

45. Plaintiff felt further victimized and left the meeting with nothing addressed and/or solved.

46. During the next several weeks Plaintiff's tasks and responsibilities were dramatically reduced.

47. On April 9, 2019, Plaintiff sent out a claim letter in good faith attempt to resolve Plaintiff's discrimination and retaliation claims. However, attempts were futile, and Defendants did not want to engage in resolving the matter.

48. On or around June 3, 2019, Plaintiff was transferred and reassigned to a new office. In this new office, Plaintiff was the sole employee assigned to work from this location for Defendants. Plaintiff had limited emails exchanged with other employees and received limited notifications of the current events of the company.

49. Defendants intentionally shutting out Plaintiff and isolating Plaintiff from Defendants' daily operations are examples of further retaliation for complaining of sexual harassment.

50. On December 2, 2019, Defendant Murray Friedman sent a letter terminating Plaintiff's employment. In the letter, Defendant Murray Friedman stated all operations were

suspended and closed its office in New York. Rather, Defendants were focusing and shifting its resources to its operations in Tampa, Florida.

51. Defendants' reason for Plaintiff's termination was clearly pretextual based on Plaintiff's engagement in protected activity. Plaintiff's termination was due to discrimination and retaliation based on Plaintiff's gender.

52. Plaintiff was subjected to a continuous retaliatory hostile environment by being excluded from meetings, having her emails disregarded, and being isolated from other employees.

53. Plaintiff took her employment termination as retaliatory action related to her continued engagement in a protected activity.

54. Defendants, each collectively and individually, condoned, ratified, and supported the discriminatory and sexually hostile work environment against Plaintiff.

55. Defendants had no good faith business justification for any of the actions (or failures/refusals to act), including terminating Plaintiff's employment, with regard to Plaintiff.

56. Plaintiff complaints were futile.

57. As far as Plaintiff was aware, Defendants did not have a human resources department.

58. As such, Plaintiff had nowhere, or no one else, to which to complain about discrimination while employed with Defendants.

59. Upon information and belief, Defendants did not have any written procedures or protocols regarding sexual harassment, discrimination or retaliation in the workplace to which Plaintiff could refer.

60. Plaintiff's only remedy was to complain to certain individuals herein, who actively engaged in the discrimination and/or did nothing in response to Plaintiff's multiple complaints.

61. As a direct result of the wrongful and oppressive actions of Collective Defendants, Plaintiff

was sexually harassed, subjected to unlawful discrimination/retaliation, subjected to a hostile work environment, humiliated and she experienced a work environment permeated with ongoing and continuous embarrassment, discriminatory ridicule, and hostility.

62. As a result of Collective Defendants' actions, Plaintiff was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

63. As a direct result of the acts and conduct complained of herein, Plaintiff has suffered damages, inconvenience and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, humiliation, anger, depression, sadness, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

64. Collective Defendants' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

65. As such, Plaintiff demands Punitive Damages as against all Defendants, jointly and severally.

### AS A *FIRST* CAUSE OF ACTION FOR DISCRIMINATION
### VIOLATIONS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
*(Against Defendant ANR)*

66. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

67. Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-2(a)(1) provides, in pertinent part, that:

> It shall be an unlawful employment practice for an employer to … discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, *sex*, or national origin.

68. DEFENDANTS engaged in unlawful employment practices prohibited by 42 U.S.C.

8

§2000e *et seq.*, by discriminating against Plaintiff because of her sex/gender.

69. Collective Defendants ignored and minimalized Plaintiff's numerous complaints and/or protection against the hostile environment she faced on a daily basis.

70. When Plaintiff complained to management, including Collective Defendants, Plaintiff's environment became more hostile.

71. As a result of Collective Defendants' actions, Plaintiff was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

72. As a direct result of the acts and conduct complained of herein, Plaintiff has suffered damages, inconvenience, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, humiliation, anger, depression, sadness, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

73. Collective Defendants' conduct was malicious, willful and conducted with full knowledge of the law.

74. Plaintiff is entitled to the maximum amount allowed under this statute/law.

**AS A *SECOND* CAUSE OF ACTION**
**FOR RETALIATION UNDER TITLE VII**
(***Against Defendant ANR***)

75. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

76. Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this

subchapter."

77. Collective Defendants' engaged in an unlawful discriminatory practice by retaliating, and otherwise discriminating against Plaintiff because of Plaintiff's opposition to unlawful employment practices.

78. Plaintiff was retaliated against by Collective Defendants for engaging in protected activity.

79. Following Plaintiff's complaints, Plaintiff was subjected to a worse hostile environment permeated with discriminatory ridicule, comments, insults, further sexual harassment, adverse employment actions, and other retaliatory behavior.

80. As a direct result of the acts and conduct complained of herein, Plaintiff has suffered inconvenience, special damages, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, humiliation, anger, depression, sadness, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

81. Collective Defendants' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

82. Plaintiff is entitled to the maximum amount allowed under this statute/law.

## AS A *THIRD* CAUSE OF ACTION FOR DISCRIMINATION UNDER NEW YORK STATE EXECUTIVE LAW
(*Against Defendants*)

83. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

84. New York State Executive Law §296 provides that, "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's . . . sex, disability . . . familial status … to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

85. While employed with Collective Defendants, Plaintiff was subjected to ongoing, continuous and repetitive sexual harassment, differential treatment, hostile work environment, harassment, verbal and physical abuse, hostile work environment and activity by her coworkers and managers - including named Defendants herein.

86. Further, Defendants ignored and minimalized Plaintiff's numerous complaints and requests for assistance and/or protection against the hostile environment she faced on a daily basis.

87. As a direct result of the acts and conduct complained of herein, Plaintiff has suffered damages, inconvenience, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, humiliation, anger, depression, sadness, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

88. Collective Defendants' conduct was malicious, willful and conducted with full knowledge of the law.

89. Plaintiff is entitled to the maximum amount allowed under this statute/law.

### AS A *FOURTH* CAUSE OF ACTION FOR RETALIATION UNDER NEW YORK STATE EXECUTIVE LAW
*(Against Defendants)*

90. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

91. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

92. Defendants engaged in an unlawful discriminatory practice by retaliating, and otherwise discriminating against Plaintiff because of Plaintiff's opposition to unlawful employment

practices.

93. Following Plaintiff's complaints, Plaintiff was subjected to a hostile environment permeated with discriminatory ridicule, comments, insults, further sexual harassment, adverse employment actions, and other retaliatory behavior.

94. As a result of Collective Defendants' actions, Plaintiff was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

95. As a direct result of the acts and conduct complained of herein, Plaintiff has suffered damages, inconvenience, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, humiliation, anger, depression, sadness, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

96. Collective Defendants' conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

97. Plaintiff is entitled to the maximum amount allowed under this statute/law.

**AS A *FIFTH* CAUSE OF ACTION FOR DISCRIMINATION
UNDER NEW YORK STATE EXECUTIVE LAW - *AIDER AND ABETTOR LIABILITY***
*(As and Against Individual Defendants Mr. Murray Friedman and Mr. Neal Friedman)*

98. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

99. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to **aid, abet**, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

100. Individual Defendants Mr. Murray Friedman and Mr. Neal Friedman engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory and retaliatory

conduct of their employee, Defendant Waismann.

101. As a result of their actions, Plaintiff was extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

102. As a direct result of the acts and conduct complained of herein, Plaintiff has suffered damages, inconvenience and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, humiliation, anger, depression, sadness, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

103. Individual Defendants Mr. Murray Friedman and Mr. Neal Friedman's conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

104. Plaintiff is entitled to the maximum amount allowed under this statute/law.

## PUNITIVE DAMAGES

105. Defendants conduct was malicious, willful, outrageous, and conducted with full knowledge of the law.

106. As such, punitive damages are appropriate as a result of Defendants' above-described conduct and Plaintiff demands Punitive Damages as against all Defendants, jointly and severally.

## JURY DEMAND

107. Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII, and NYSHRL in that Defendants discriminated against Plaintiff on the basis of her gender and retaliated against Plaintiff by subjecting Plaintiff to a hostile work environment and eventually termination Plaintiff's employment for engaging in protected activity;

B.     Awarding damages to Plaintiff for all damages resulting from Defendants' unlawful discrimination and retaliation and to otherwise make her whole for any losses suffered as a result of such unlawful employment practices;

C.     Awarding Plaintiff compensatory damages related to injuries suffered as per Plaintiff's State-law claims;

D.     Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to her reputation in an amount to be proven;

E.     Awarding Plaintiff punitive damages;

F.     Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the action; and

G.     Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful employment practices.

Dated: New York, New York
        December 18, 2019

                                                          **PHILLIPS & ASSOCIATES,**
                                                          **ATTORNEYS AT LAW, PLLC**

**By:**    /s/ Marjorie Mesidor
         Marjorie Mesidor, *Esq.*
         Irene Chan, *Esq.*
         **Phillips & Associates, PLLC**
         *Attorneys for Plaintiffs*
         45 Broadway, Suite 620
         New York, New York 10006
         T: (212) 248-7431
         F: (212) 901-2107
         mmesidor@tpglaws.com
         ichan@tpglaws.com



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
For General Information: (800) 669-4000
District Office: (212) 336-3620
General FAX: (212) 336-3625

Ms. Jeni Wallace
c/o Marjorie Mesidor, Esq.
45 Broadway, suite 620
New York, NY 10006

Re:   EEOC Charge No. 520-2019-04732
      *Wallace v. ANR Practice Management, LLC.*

Dear Ms. Wallace

This office is in receipt of your request for a *Notice of Right to Sue* on the above-referenced charge. Ordinarily, a charging party or his/her counsel is not entitled to receive a *Notice of Right to Sue* upon request until the charge has been pending with the EEOC for at least 180 days. However, an early *Notice of Right to Sue* is authorized by 29 C.F.R. § 1601.28(a)(2) if the Director determines that the Commission will not be able to complete its administrative process within 180 days of the date the charge was filed.

We have reviewed all the circumstances of this case and have determined that issuing you the requested *Notice of Right to Sue* is warranted at this time. Specifically, given our office's current workload, we have concluded that the EEOC will be unable to complete the processing of this charge within 180 days of the date the charge was filed.

Enclosed is your *Notice of Right to Sue*. If you have any questions, please contact Investigator Christopher Fuentes at (212) 336-3778.

On Behalf of the Commission

_____                                              9/25/19
Kevin J. Berry                                                          Date
District Director

EEOC Form 161-B (11/16)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Jeni Wallace<br>10 Churchill Avenue<br>Yonkers, NY 10704 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

[ ]   *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2019-04372 | **Christopher Y. Fuentes,** Investigator | (212) 336-3778 |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ]   More than 180 days have passed since the filing of this charge.

[X]   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]   The EEOC is terminating its processing of this charge.

[ ]   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ]   The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]   The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Kevin J. Berry
District Director

9/25/19
*(Date Mailed)*

Enclosures(s)

cc:
    ANR PRACTICE MANAGEMEN, LLC
    961 Broadway
    Woodmere, NY 11598

    Marjorie Mesidor, Esq.
    PHILLIPS & ASSOCIATES
    Attorneys At Law, PLLC
    45 Broadway, Suite 620
    New York, NY 10006

Enclosure with EEOC
Form 161-B (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS**   --   **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS**   --   **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice and within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION**   --   **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do **not** relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE**   --   **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

Case 2:19-cv-07089-MKB-RER   Document 1   Filed 12/18/19   Page 18 of 18 PageID #: 18

Enclosures(s)

cc: